1  Robert Garrett, SBN 065886
   rgarrett@garrett-tully.com
2  Alexander Levy, SBN 061887
   alevy@garrett-tully.com
3  Candie Chang, SBN 215019
   chang@garrett-tully.com
4  GARRETT & TULLY, P.C.
   225 S. Lake Avenue, Suite 1400
5  Pasadena, CA 91101-4869
   Telephone: (626) 577-9500
6  Facsimile: (626) 577-0813



FILED
CLERK, U.S. DISTRICT COURT

DEC 22 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

7  Attorneys for Federal Deposit Insurance Corporation
   as Receiver for IndyMac Federal Bank, FSB

8

9                **UNITED STATES DISTRICT COURT**

10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  Federal Deposit Insurance Corporation,     CASE NO. **CV10   9894 ODW   (Ex)**
12  as Receiver for IndyMac Federal Bank,
    FSB                                        Verified Complaint
13
                    Plaintiff,                 (1)  Cancel Instruments
14
            vs.                                (2)  Remove Clouds on Title
15
    Dominique Ocampo; Jasmine Bayot            (3)  Quiet Title
16  Golez Ocampo; Devonna Troope; Erez
    Yehezkilof, Iris Yehezkilof; Coastline     (4)  Declaratory Relief
17  Lending Group; FCI Lender Services,
    Inc., a corporation; Does 1 through 5,     (5)  Slander of Title
18  being all persons unknown, claiming any
    legal or equitable right, title, estate, lien
19  or interest in the property described in
    the complaint adverse to the plaintiff's
20  title, or any cloud on plaintiff's title
    thereto; Does 6 through 10,
21
22                  Defendants.
23

24  The Federal Deposit Insurance Corporation, as Receiver for IndyMac Federal Bank,

25  FSB ("FDIC"), complains of defendants and each of them, and for a cause of action,

26  alleges as follows:

27  / / / / /

28  / / / / /

*GARRETT & TULLY*
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

1

# I.

## Parties

1. <u>FDIC.</u> FDIC: (a) is a federal corporation established by the United States Congress, effective June 16, 1933, pursuant to 12 United States Code section 1819(a), a provision of the Federal Reserve Act, chapter 89, section 8, 48 Stat. 168, having the authority pursuant to 12 United States Code section 1819(a) "To act as receiver;" and (b) since March 19, 2009, has been, pursuant to an order of the Office of Thrift Supervision ("OTS"), the appointed Receiver for IndyMac Federal Bank, FSB. The FDIC brings this action in that capacity.

2. <u>Defendants Yehezkilof.</u> FDIC is informed and believes, and based thereon alleges, that at all times herein relevant, Defendants Erez Yehezkilof and Iris Yehezkilof ("the Yehezkilofs") were and are husband and wife, residing in the County of Riverside, California. They are sued here as the holders, according to the public record, of the beneficial interest in the Yehezkilof Deed of Trust hereinafter described.

3. <u>Defendant Coastline Lending Group.</u> FDIC is informed and believes, and based thereon alleges, that at all times herein relevant defendant Coastline Lending Group ("Coastline") was and is a business organization of some kind, the nature of which is unknown to FDIC at this time. Coastline is sued solely as the trustee of the Yehezkilof Deed of Trust hereinafter described, and solely for the purpose of affording this court complete jurisdiction to set that deed of trust aside as hereinafter alleged.

4. <u>Defendant FCI.</u> FDIC is informed and believes, and based thereon alleges, that at all times herein relevant, defendant FCI Lender Services, Inc. ("FCI") was and is a corporation duly organized and existing pursuant to the laws of the State of California authorized to do and doing business in Riverside County, California. FCI is sued solely as the agent of the trustee of the Yehezkilof Deed of Trust hereinafter described, and solely for the purpose of affording this court complete

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Verified Complaint

1   jurisdiction to set that deed of trust aside as hereinafter alleged.

2       5.   <u>Individual Defendants.</u>  FDIC is informed and believes, and based

3   thereon, alleges that at all times herein relevant, defendants Jasmine Bayot Golez

4   Ocampo ("Mrs. Ocampo") and Devonna Troope ("Troope") were and are residents of

5   the County of Riverside.

6       6.   <u>Doe Defendants - Title.</u>  Defendants Does 1 through 5, named herein as

7   "All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate Lien or

8   Interest in the Property Described in the Complaint Adverse to plaintiff's Title, or

9   Any cloud on plaintiff's Title Thereto" are unknown to FDIC.  FDIC is informed and

10  believes and thereon alleges that these defendants, and each of them, claim some

11  right, title, estate, lien, or interest in the real property hereinafter described, adverse to

12  FDIC's title, and that those defendants' claims, and each of their claims, constitute a

13  cloud on FDIC's title to the property hereinafter described.  All such claims are

14  without any right whatsoever, and those defendants have no right, title, estate, lien, or

15  interest whatsoever in the property hereinafter described, or any part thereof.

16      7.   <u>Other Doe Defendants.</u>  FDIC is ignorant of the true names and

17  capacities of defendants sued herein as Does 6 through 10, inclusive, and therefore

18  sues said defendants by such fictitious names.  When their true names and capacities

19  are ascertained, FDIC will amend this complaint to add them as parties defendant.

20  FDIC is informed and believes, and thereon alleges, that each defendant named as a

21  Doe is also responsible for the matters hereinafter complained of in whole or in part.

22      8.   <u>Agency.</u>  FDIC is informed and believes, and thereon alleges, that each

23  defendant named in this complaint was at all times herein mentioned the agent and/or

24  employee, principal and/or employer of each of the other defendants named herein,

25  and was, at all such times, acting within the course and scope of such and/or

26  employment, and with the authorization, permission, consent and/or ratification of

27  each other defendant.

28  / / / / /

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

3

Verified Complaint

## II.

## Jurisdiction and Venue

9.   This action is properly brought in this court, pursuant to: (1) 12 United States Code section 1819(a): "Upon June 16, 1933, the Corporation [the Federal Deposit Insurance Corporation] shall become a body corporate and as such shall have power – . . . Fourth. To sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal;" and (2) 12 United States Code section 1819(b)(2)(A): ". . . all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."  This court is the proper venue for this action because IndyMac Bank was an FDIC-insured banking corporation organized and existing under the laws of the State of California, with its  principal place of business in the County of Los Angeles, California.

## III.

## Summary of the Action

10.   FDIC, as Receiver for IndyMac Federal Bank, FSB, seeks to cancel a number of forged and/or unauthorized instruments recorded against the property hereinafter described, which were wrongfully recorded against that property and which disparage the FDIC's interest therein.

## IV.

## Facts Common to All Claims for Relief

## A.

## The Property

11.   This action involves that real property ("the Property") commonly known as 2633 Hudson Avenue, Corona, California, also known as Riverside County Tax Parcel number 120-480-028-7, and legally described as follows:

/////

/////

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

4

Verified Complaint

1    Lot 28 of Tract No. 29263, in the City of Corona, County of Riverside

2    State of California, as shown by Map field in Book 291, Pages 29 through

3    31, inclusive of Maps, in the Office of the County Recorder of Said County.

4                                    **B.**

5             **Defendant Ocampo Acquires the Property**

6        12.   According to the public record, defendant Dominique Ocampo

7   ("Ocampo") acquired the Property by a Grant Deed recorded on July 2, 2007, as

8   instrument number 2007-0431652, in the Official Records of the County Recorder of

9   Riverside County. A true and correct copy of that deed as recorded is attached hereto

10  as Exhibit "1," and incorporated here by reference.

11       13.    According to the public record, recorded concurrently on July 2, 2007,

12  with that deed, as instrument number 2007-0431651, was an "Interspousal Transfer

13  Grant Deed" given by Mrs. Ocampo, as the spouse of the grantee, to "Dominique

14  Ocampo, a married man as his sole and separate property," grantee. A true and correct

15  copy of that deed  as recorded is attached hereto as Exhibit "2," and incorporated here

16  by reference.

17                                   **C.**

18       **Ocampo Gives IndyMac Bank a Purchase Money Deed of Trust.**

19       14.   On July 2, 2007, IndyMac Bank F.S.B., a federally chartered

20  savings bank ("IndyMac Bank"), lent defendant Ocampo $880,000.00 of the price for

21  the purchase of the Property ("the IndyMac Loan").  Repayment of the loan was

22  secured by a deed of trust given by Ocampo, as trustor, to IndyMac Bank, as

23  beneficiary, recorded against the Property on July 2, 2007, as instrument number

24  2007-0431653 ("the IndyMac Bank Deed of Trust"). A true and correct copy of that

25  deed of trust as recorded is attached hereto as Exhibit "3," and incorporated here by

26  reference.

27  / / / / /

28  / / / / /

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

5                                                       Verified Complaint

**D.**

## Concurrent HELOC Deed of Trust

15.  On July 2, 2007, IndyMac Bank entered into a line of credit agreement with defendant Ocampo which provided for, among other things, a maximum amount of debt of $165,000.  Performance under the line of credit agreement was secured by a deed of trust given by defendant Ocampo, as trustor, to IndyMac Bank, as beneficiary, recorded on July 2, 2007, as instrument number 2007-0431654 ("the IndyMac HELOC Deed of Trust"). A true and correct copy of that deed of trust as recorded is attached hereto as Exhibit "4," and incorporated here by reference.

**E.**

## FDIC As Conservator Acquires the IndyMac Deed of Trust

16.    On July 11, 2008, pursuant to its order number 2008-24, the OTS: (a)  closed IndyMac Bank; and (b) appointed the FDIC as its Receiver pursuant to 12 U.S.C. §1821(c)(2)(A) and (5).  FDIC accepted the appointment. Pursuant to 12 U.S.C. section 1821(d)(2)A(I), FDIC as Receiver succeeded to all of the rights, titles and interests in and to the bank's assets, including the IndyMac Loan and Deed of Trust.

17.    Also on July 11, 2008, the OTS: (a) chartered a new institution, IndyMac Federal Bank, FSB ("IndyMac Federal Bank"); (b) transferred certain assets from FDIC as Receiver for IndyMac Bank to IndyMac Federal Bank, FSB, including the IndyMac Loan and Deed of Trust; and (c) appointed FDIC as Conservator for IndyMac Federal Bank, FSB.   FDIC accepted its appointment.

18.    Also on July 11, 2008, the bulk of the assets and deposit liabilities of IndyMac Federal Bank, including the IndyMac Loan and Deed of Trust, were transferred to FDIC as conservator for IndyMac Federal Bank pursuant to a Purchase-and-Assumption Agreement between the FDIC in its corporate capacity, FDIC as Receiver for IndyMac Bank, and FDIC as Conservator for IndyMac Federal Bank, FSB.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

6

Verified Complaint

**F.**

**Foreclosure of Deed of Trust; Title in IndyMac Federal Bank.**

19.   On March 9, 2009, after compliance with the statutory provisions governing non-judicial foreclosures in California, a trustee sale was held pursuant to the power of sale contained in the IndyMac Bank Deed of Trust, at which time IndyMac Federal Bank purchased the Property (as the FDIC's conservatee).  The Trustee's Deed Upon Sale ("the Trustee's Deed") conveying the Property to IndyMac Federal Bank recorded on March 23, 2009, as instrument number 2009-0139854. A true and correct copy of that Trustee's Deed Upon Sale as recorded is attached hereto as Exhibit "5," and incorporated here by reference.

**G.**

**FDIC Takes Ownership of the Property as Receiver.**

20.   On March 19, 2009, pursuant to its order number 2009-17, the OTS: (a) closed IndyMac Federal Bank, FSB; and (b) appointed FDIC its Receiver. Pursuant to 12 U.S.C. section 1821(d)(2)A(I), FDIC as Receiver succeeded to all of the rights, titles and interests of the bank in and to the bank's assets, including the IndyMac Loan and Deed of Trust.  FDIC accepted that appointment.

**H.**

**Forged IndyMac Federal Bank Deed**

21.   On January 15, 2010, a deed recorded, purportedly conveying the Property from the "FDIC as Receiver for IndyMac Federal Bank F.S.B." to "Dominique Ocampo, as married man as his sole and separate property." It was recorded as instrument number 0019335 ("the Ocampo Deed").  The deed is a forgery, unauthorized by the FDIC in any capacity or IndyMac Federal Bank. A true and correct copy of the Ocampo Deed as recorded is attached hereto as Exhibit "6," and incorporated here by reference.

22.   Louise Chavez, not a party to this action, who purportedly executed the Ocampo Deed on behalf of FDIC as Receiver, has testified by declaration that she did

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

Verified Complaint

not sign that deed. Stacey A. Francis, not a party to this action, who on the face of the Ocampo Deed appears as the notary who purportedly executed the acknowledgment of Ms. Chavez's signature, has testified by declaration that she did not take the acknowledgment of Ms. Chavez's signature, as the signature appears on the deed, and did not sign the acknowledgment contained in the deed.

## I.
## The Troope Grant Deed

23.    Recorded concurrently with the Ocampo Deed on January 15, 2010, as instrument number instrument number 2010-0019336, was a "Grant Deed" in which defendant Devonna Troope, a single woman, purported to deed the Property to defendant Ocampo ("the Troope Deed").   A true and correct copy of the Troope Deed as recorded is attached hereto as Exhibit "7," and incorporated here by reference.

## J.
## Forged IndyMac Federal Bank Demand and Reconveyance

24.    FDIC has been advised that the party who disbursed the proceeds of the Yehezkilof Loan believed that it was disbursing some or all of the loan proceeds to IndyMac Federal Bank FSB pursuant to a demand for payment ("the Demand") purportedly made by the bank.

25.    Neither FDIC nor IndyMac Federal Bank FSB prepared the Demand, submitted it for payment, or received or accepted from the proceeds of the Yehezkilof Loan, any payment for the IndyMac Loan by virtue of the Demand or otherwise.

26.    On February 18, 2010, a document recorded as instrument number 2010-73571 entitled "Substitution of Trustee and Full Reconveyance" which purported to be a reconveyance of the IndyMac Deed of Trust, executed by "Daris Buckler, Vice President, IndyMac Bank, FSB, Its Servicer" ("the Reconveyance of

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

Verified Complaint

1   the IndyMac Deed of Trust"). A true and correct copy of the Reconveyance of the

2   IndyMac Deed of Trust as recorded is attached hereto as Exhibit "8," and

3   incorporated here by reference.

4         27.   According to the face of the Reconveyance of the IndyMac Deed

5   of Trust, as recorded, the acknowledgment of the signature of Daris Buckler was

6   taken by an Oswaldo Flores, as a notary public (not a party to this action). Daris

7   Buckler has advised FDIC that she did not sign the Reconveyance of the IndyMac

8   Deed of Trust; that she did not appear before a notary to acknowledge that she had

9   signed that document; that she knows nothing of the IndyMac Loan.

**K.**

**Forged Reconveyance of IndyMac HELOC Deed of Trust**

12         28.   On February 18, 2010, a document recorded as instrument number

13   2010-73574 entitled "Substitution of Trustee and Full Reconveyance" which

14   purported to be a reconveyance of the IndyMac HELOC Deed of Trust, executed by

15   "Daris Buckler, Vice President, IndyMac Bank, FSB, Its Servicer" ("the

16   Reconveyance of the IndyMac HELOC Deed of Trust"). A true and correct copy of

17   the Reconveyance of the IndyMac HELOC Deed of Trust") as recorded is attached

18   hereto as Exhibit "9," and incorporated here by reference.

19         29.   According to the face of the Reconveyance of the IndyMac

20   HELOC Deed of Trust, as recorded, the acknowledgment of the signature of Daris

21   Buckler was taken by an Oswaldo Flores, as a notary public (not a party to this

22   action). Daris Buckler has advised FDIC that she did not sign the Reconveyance of

23   the IndyMac HELOC Deed of Trust; that she did not appear before a notary to

24   acknowledge that she had signed that document; that she knows nothing of the

25   IndyMac Loan.

26   / / / / /

27   / / / / /

28   / / / / /

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

9

Verified Complaint

**L.**

**Unauthorized Yehezkilof Deed of Trust**

30.   On March 29, 2010, a deed of trust recorded purporting to encumber the Property, given by defendant Ocampo, as trustor, to defendants Erez Yehezkilof and Iris Yehezkilof ("the Yehezkilofs"), as beneficiaries. It was recorded as instrument number 2010-0141138 ("the Yehezkilof Deed of Trust"). Defendant Coastline was the original trustee of the deed of trust and according to the public record is currently the trustee of that deed of trust. The Yehezkilof Deed of Trust recites, among other things, that it secures a promissory note in the original principal amount of ($212,500.00 "the Yehezkilof Loan"). A true and correct copy of the Yehezkilof Deed of Trust as recorded is attached hereto as Exhibit "10," and incorporated here by reference.

**M.**

**Mrs. Ocampo's Spousal Deed**

31.   Recorded concurrently on March 29, 2010, with the Yehezkilof Deed of Trust, as instrument number 2010-0141137, was a "Quitclaim Deed" of the Property from defendant Mrs. Ocampo, as grantor, to defendant Ocampo, as grantee, in which Mrs. Ocampo purported to relinquish any right, title and interest in and to the Property she had, if any, in favor of her husband, defendant Ocampo ("Mrs. Ocampo's Spousal Deed"). A true and correct copy of Mrs. Ocampo's Spousal Deed as recorded is attached hereto as Exhibit "11," and incorporated here by reference.

**N.**

**Pending Foreclosure of Yehezkilof Deed of Trust**

32.   On September 16, 2010, defendant FCI, as agent for defendants, the Yehezkilofs, recorded a notice of default ("the Notice of Default") as instrument number 2010-0445274, thereby commencing non-judicial foreclosure proceedings under the Yehezkilof Deed of Trust. A true and correct copy of the Notice of Default as recorded is attached hereto as Exhibit "12," and incorporated here by reference.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

Verified Complaint

33.   On December 13, 2010, FDIC made written demand on defendant FCI, in its capacity as trustee of the Yehezkilof Deed of Trust and as agent of defendants the Yehezkilofs, as beneficiaries of the Yehezkilof Deed of Trust, that they immediately terminate the foreclosure proceedings and record a reconveyance of that deed of trust.

34.   Defendants, the Yehezkilofs have, through their agent, communicated to counsel for FDIC that they have instructed their trustee to halt the pending foreclosure proceedings in response to FDIC's demand.

## FIRST CLAIM FOR RELIEF

### (For Cancellation of Instruments Against Defendants Ocampo, Mrs. Ocampo, Troope, the Yehezkilofs, Coastline, FCI, and Does 1 through 5)

35.   FDIC incorporates here by reference each and every allegation contained in paragraphs 1 through 34 hereinabove.

36.   As above alleged, there exists in the public record the following instruments which are void and as to which there is a reasonable apprehension that if left outstanding they have and will cause serious loss to FDIC: (a) the Ocampo Deed (Exhibit "6"); (b) Troope Deed (Exhibit "7"); (c) the Reconveyance of the IndyMac Deed of Trust (Exhibit "8"); (d) the Reconveyance of the IndyMac HELOC Deed of Trust (Exhibit "9"); (e) the Yehezkilof Deed of Trust (Exhibit "10"); (f) Mrs. Ocampo's Spousal Deed (Exhibit "11"); and (g) the Notice of Default (Exhibit "12").

37.   FDIC is therefore entitled to a judgment pursuant to California Civil Code section 3412, and in equity otherwise, declaring those instruments void *ab initio* and ordering that the same are cancelled.

38.   FDIC is also entitled to a temporary restraining order, preliminary, and permanent injunction enjoining defendants, and each of them, as well as their agents, attorneys, representatives, and all persons acting in concert or otherwise participating with them from: (a) transferring, selling, conveying or encumbering any right, title or

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Verified Complaint

1    interest in the Property or any part thereof; and (b) from taking any action to enforce

2    the Yehezkilof Deed of Trust against the Property, or any part thereof.

3         39.    As a result of the conduct of defendants as hereinabove alleged, FDIC

4    has been compelled to engage counsel to commence and prosecute this action in order

5    to remove the false claims to its Property. Therefore, FDIC is entitled to an award of

6    attorneys' fees and costs incurred in connection with the commencement and

7    prosecution of this action.

8                     **SECOND CLAIM FOR RELIEF**

9       **(To Remove Clouds on Title Against Defendants Ocampo, Mrs.**

10   **Ocampo, Troope, the Yehezkilofs, Coastline, FCI, and Does 1 through 5)**

11         40.    FDIC incorporates here by reference each and every allegation

12   contained in paragraphs 1 through 39 hereinabove.

13         41.    As above alleged, there exists in the public record the following

14   instruments which are void, the existence of which cloud FDIC's title to the Property:

15   (a) the Ocampo Deed (Exhibit "6"); (b) Troope Deed (Exhibit "7"); (c) the

16   Reconveyance of the IndyMac Deed of Trust (Exhibit "8"); (d) the Reconveyance of

17   the IndyMac HELOC Deed of Trust (Exhibit "9"); (e) the Yehezkilof Deed of Trust

18   (Exhibit "10"); (f) Mrs. Ocampo's Spousal Deed (Exhibit "11"); and (g) the Notice of

19   Default (Exhibit "12").

20         42.    FDIC is therefore entitled to a judgment in equity removing said

21   instruments as clouds on title which though void, call the FDIC's title and the value

22   of its title into question without right or privilege.

23         43.    FDIC is also entitled to a temporary restraining order, preliminary, and

24   permanent injunction enjoining defendants, and each of them, as well as their agents,

25   attorneys, representatives, and all persons acting in concert or otherwise participating

26   with them from: (a) transferring, selling, conveying or encumbering any right, title or

27   interest in the Property or any part thereof; and (b) from taking any action to enforce

28   the Yehezkilof Deed of Trust against the Property, or any part thereof.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

Verified Complaint

44.    As a result of the conduct of defendants as hereinabove alleged, FDIC has been compelled to engage counsel to commence and prosecute this action in order to remove the false claims to its Property. Therefore, FDIC is entitled to an award of attorneys' fees and costs incurred in connection with the commencement and prosecution of this action.

## THIRD CLAIM FOR RELIEF

### (For Quiet Title Against Defendants Ocampo, Mrs. Ocampo, Troope, the Yehezkilofs, Coastline, FCI, and Does 1 through 5)

45.    FDIC incorporates here by reference each and every allegation contained in paragraphs 1 through 44 above.

46.    FDIC seeks to quiet title as the Receiver for IndyMac Federal Bank, FSB, to the title acquired by IndyMac Federal Bank, FSB (as FDIC's conservatee) by virtue of the Trustee's Deed Upon Sale described hereinabove.

47.    FDIC understands defendants Ocampo, Mrs. Ocampo, the Yehezkilofs, Troope, Coastline FCI, and Does 1 through 5,  claim some right, title, or interest in the Property.

48.    Defendants have no right, title or interest in or to the Property or any part thereof, for the reasons hereinabove alleged.

49.    FDIC therefore seeks to quiet title to the Property against the adverse claims of defendants, and each of them, as of  March 19, 2009, that is, as of the date on which the FDIC, pursuant to an order of the OTS, acquired the title to the Property as Receiver for IndyMac Bank FSB, as above-alleged.

50.    FDIC is also entitled to a temporary restraining order, preliminary, and permanent injunction enjoining defendants, and each of them, as well as their agents, attorneys, representatives, and all persons acting in concert or otherwise participating with them from: (a) transferring, selling, conveying or encumbering any right, title or interest in the Property or any part thereof; and (b) from taking any action to enforce the Yehezkilof Deed of Trust against the Property, or any part thereof.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

**FOURTH CLAIM FOR RELIEF**

**(For Declaratory Relief Against Defendants Ocampo, Mrs. Ocampo, Troope, the Yehezkilofs, Coastline, FCI, and Does 1 through 5)**

51.     FDIC incorporates here by reference each and every allegation contained in paragraphs 1 through 50 above.

52.     An actual controversy exists between FDIC, on the one hand, and defendants Ocampo, Mrs. Ocampo, Troope, the Yehezkilofs, Coastline, FCI, and Does 1 through 5, on the other hand, in that FDIC contends and said defendants deny:

          a.     That the instruments described above at paragraph 36 have at all times been void and of no force and effect;

          b.     That said defendants have no right, title or interest in or to the Property or any part thereof;

          c.     That the Yehezkilof Deed of Trust cannot be enforced against the Property or any part thereof.

          d.     That FDIC is entitled to recover the attorney fees and costs it incurs in order to clear its title, including but not limited to, the commencement and prosecution of this action.

53.     FDIC desires a judicial determination of the respective rights and duties of FDIC and said defendants with respect to the Property.

54.     The declaratory relief sought is necessary and appropriate at this time in order that FDIC and defendants may ascertain their respective rights and duties concerning the Property.

55.     FDIC is also entitled to a temporary restraining order, preliminary, and permanent injunction enjoining defendants, and each of them, as well as their agents, attorneys, representatives, and all persons acting in concert or otherwise participating with them from: (a) transferring, selling, conveying or encumbering any right, title or interest in the Property or any part thereof; and (b) from taking any action to enforce the Yehezkilof Deed of Trust against the Property, or any part

68355_1.wpd
99000-AL

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Verified Complaint

1  thereof.

2  ## FIFTH CLAIM FOR RELIEF

3  ### (For Slander of Title Against Defendants Ocampo, Mrs. Ocampo,

4  ### Troope and Does 6 through 10)

5        56.      FDIC incorporates here by reference each and every allegation

6  contained in paragraphs 1 through 55 hereinabove.

7        57.      The existence of the Ocampo Deed, the Troope Deed, Mrs.

8  Ocampo's Spousal Deed, the Reconveyance of IndyMac Deed of Trust, the

9  Reconveyance of the IndyMac HELOC Deed of Trust, the Yehezkilof Deed of Trust

10  and the Notice of Default in the public record, each constitute a false representation,

11  made without right or privilege, by defendants Ocampo, Mrs. Ocampo, Troope,

12  and/or Does 6 through 10, that the recorded instrument creates or evidences some

13  right, title, claim, or interest in the Property, or some possible right, title, claim, or

14  interest in the Property.

15        58.      The actions of said defendant have impaired the value of FDICs'

16  title to the Property and have thereby been the proximate cause of loss to FDIC in an

17  amount to be proved at the time of trial.

18        59.      In addition, as a direct and proximate result of said defendant's

19  conduct, FDIC has been compelled to incur attorneys' fees and costs in order to

20  commence and prosecute this action.  Therefore, FDICs are entitled to an award of

21  attorneys' fees in addition to all other relief requested (*Wright v. Rogers* (1959) 172

22  Cal.App.2d 349, 366; Cal Civ. Code § 3333; *Contra Costa County Title Co. v. Waloff*

23  (1960) 184 Cal.App.2d 59, 68).

24        60.      FDIC is informed and believes, and based thereon, alleges that in

25  doing the things complained of hereinabove, said defendants were guilty of

26  oppression, fraud or malice, such that FDIC is entitled to recover punitive damages

27  pursuant to Civil Code section 3294.

28  / / / / /

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

15

Verified Complaint

1   WHEREFORE, FDIC prays for judgment against defendants and each of

2   them as follows:

3   **AS TO THE FIRST CLAIM FOR RELIEF TO CANCEL RECORDED**

4   **INSTRUMENTS**

5   1.   For a judgment cancelling: (a) the Ocampo Deed (Exhibit "6"); (b)

6   Troope Deed (Exhibit "7"); (c ) the Reconveyance of the IndyMac Deed of Trust

7   (Exhibit "8"); (d ) the Reconveyance of the IndyMac HELOC Deed of Trust (Exhibit

8   "9"); (e) the Yehezkilof Deed of Trust (Exhibit "10"); (f) Mrs. Ocampo's Spousal

9   Deed (Exhibit "11"); and (g) the Notice of Default (Exhibit "12").

10   2.   For a temporary restraining order, preliminary, and permanent injunction

11   enjoining defendants, and each of them, as well as their agents, attorneys,

12   representatives, and all persons acting in concert or otherwise participating with them

13   from: (a) transferring, selling, conveying or encumbering any right, title or interest in

14   the Property or any part thereof; and (b) from taking any action to enforce the

15   Yehezkilof Deed of Trust against the Property, or any part thereof.

16   3.   For attorney fees incurred to commence and prosecute this action;

17   **AS TO THE SECOND CLAIM FOR RELIEF TO REMOVE CLOUDS ON**

18   **TITLE**

19   4.   For a judgment removing the clouds on FDIC's title to the Property

20   represented by: (a) the Ocampo Deed (Exhibit "6"); (b) Troope Deed (Exhibit "7");

21   (c ) the Reconveyance of the IndyMac Deed of Trust (Exhibit "8"); (d ) the

22   Reconveyance of the IndyMac HELOC Deed of Trust (Exhibit "9"); (e) the

23   Yehezkilof Deed of Trust (Exhibit "10"); (f) Mrs. Ocampo's Spousal Deed (Exhibit

24   "11"); and (g) the Notice of Default (Exhibit "12").

25   5.   For a temporary restraining order, preliminary, and permanent injunction

26   enjoining defendants, and each of them, as well as their agents, attorneys,

27   representatives, and all persons acting in concert or otherwise participating with them

28   from: (a) transferring, selling, conveying or encumbering any right, title or interest in

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

Verified Complaint

1   the Property or any part thereof; and (b) from taking any action to enforce the

2   Yehezkilof Deed of Trust against the Property, or any part thereof.

3        6.   For attorney fees incurred to commence and prosecute this action;

4   **AS TO THE THIRD CLAIM FOR RELIEF TO QUIET TITLE**

5        7.   For a judgment quieting title in FDIC as of March 19, 2009, and

6   declaring that defendants Ocampo, the Yehezkilofs, Coastline and FCI have no right,

7   title or interest in the Property, or any part thereof.

8        8   FDIC is also entitled to a temporary restraining order, preliminary, and

9   permanent injunction enjoining defendants, and each of them, as well as their agents,

10   attorneys, representatives, and all persons acting in concert or otherwise participating

11   with them from: (a) transferring, selling, conveying or encumbering any right, title or

12   interest in the Property or any part thereof; and (b) from taking any action to enforce

13   the Yehezkilof Deed of Trust against the Property, or any part thereof.

14        9.   For attorney fees incurred to commence and prosecute this action;

15   **AS TO THE FOURTH CLAIM FOR RELIEF FOR DECLARATORY RELIEF**

16        10.   For a declaratory judgment as alleged at paragraph 52

17   hereinabove;

18        11.   For a temporary restraining order, preliminary, and permanent

19   injunction enjoining defendants, and each of them, as well as their agents, attorneys,

20   representatives, and all persons acting in concert or otherwise participating with them

21   from: (a) transferring, selling, conveying or encumbering any right, title or interest in

22   the Property or any part thereof; and (b) from taking any action to enforce the

23   Yehezkilof Deed of Trust against the Property, or any part thereof.

24        12.   For attorney fees incurred to commence and prosecute this action;

25   **AS TO THE FIFTH CLAIM FOR RELIEF FOR SLANDER OF TITLE**

26        13.   For compensatory damages according to proof for the

27   disparagement of FDIC's real property interest as above-alleged;

28        14.   For punitive damages according to proof at the time of trial.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

Verified Complaint

1 | **AS TO ALL CLAIMS FOR RELIEF**

2 |       15.      For costs of suit incurred herein; and

3 |       16.      For such other and further relief as the Court deems proper.

6 | DATED: December 22, 2010      GARRETT & TULLY, P.C.

Alexander Levy
Attorneys for Federal Deposit Insurance
Corporation as Receiver for IndyMac Federal
Bank, FSB

GARRETT & TULLY
A PROFESSIONAL CORPORATION

68355_1.wpd
99000-AL

18

Verified Complaint

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, Anthony Ferrulli, the undersigned, certify and declare that I have read the **Complaint** and know its contents.  The statement(s) following the box(es) checked below is/are applicable.

☐   I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

☒   I am ☐ an officer ☐ a partner ☒ Resolutions and Closing Manager for the Federal Deposit Insurance Corporation as Receiver for IndyMac Federal Bank, FSB, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

     ☐   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

     ☒   I am informed and believe that the matters set forth in the Complaint are true and correct, to the best of my knowledge, information and belief.

☐   I am one of the attorneys for _____, a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on December 21, 2010, at Irvine, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Anthony Ferrulli

_____
Signature

GARRETT  &  TULLY
A PROFESSIONAL CORPORATION

VERIFICATION FORM.wpd

# EXHIBIT 1

Document1

FIDELITY NATIONAL TITLE

RECORDING REQUESTED BY:
American Signature Escrow, Inc.

AND WHEN RECORDED MAIL TO:

Dominique Ocampo
2633 Hudson
Corona, CA 92881

Order No. 49040649
Escrow No.          :
Parcel No. 120-480-028

DOC # 2007-0431652
07/02/2007 08:00A Fee:7.00
Page 1 of 1 Doc T Tax Paid
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | | | | | | | -Y |
|---|---|---|---|---|---|---|---|---|
| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |

T: 4   CTY UNI 033

*TR~004*

**GRANT DEED**

T
033

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $1,740.00 and CITY $
☑ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☐ unincorporated area:              ☐ Corona, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Gentaro Kurihara, a single man**

hereby grants to Dominique Ocampo, **a married man as his sole and separate property**
the following described real property in the County of Riverside, State of California:

Lot 28 of Tract No. 29263 in the City of Corona, County of Riverside, State of California, as per map recorded in
Book 291 Page(s) 29 Through 31 of Miscellaneous Maps, in the Office of the County Recorder of Riverside County.

Date     June 6, 2007

*Gentaro Kurihara*
Gentaro Kurihara

STATE OF CALIFORNIA      }
                         } S.S.
COUNTY OF                }

On _June 29 2007_____, before me, _Christopher Takagaki_ notary public
personally appeared Gentaro Kurihara personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

CHRISTOPHER TAKAGAKI
Commission # 1676048
Notary Public - California
Orange County
My Comm. Expires Jun 18, 2010

CHRISTOPHER TAKAGAKI
Commission # 1676048
Notary Public - California
Orange County
My Comm. Expires Jun 18, 2010

Exp. Jun 18, 2010

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

EXHIBIT 1
PAGE 19

# EXHIBIT 2

**FIDELITY NATIONAL TITLE**

DOC # 2007-0431651
07/02/2007 08:00A Fee:16.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY:
American Signature Escrow, Inc.

AND WHEN RECORDED MAIL TO:

Dominique Ocampo
2633 Hudson Avenue
Corona, CA 92881

Order No. 49040649
Escrow No. 3290E
Parcel No. 120-480-028

| S | R | U | PAGE | SIZE | DA | MISC | | |
|---|---|---|---|---|---|---|---|---|
| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
| | | | 4 | | | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | 033 |

*TRA 004*

## INTERSPOUSAL TRANSFER GRANT DEED
(Excluded from reappraisal under California Constitution Act 13 A 1.et.seq.)

DOCUMENTARY TRANSFER TAX $NONE- ⊖ *no Consideration*

This is an Interspousal Transfer and not a change in ownership under §63 of the Revenue and Taxation Code and Grantor(s) has (have) checked the applicable exclusion from reappraisal:

☐ From Joint Tenancy to Community Property
☐ From One Spouse to Both Spouses
☒ From One Spouse to the Other Spouse
☐ From Both Spouses to the Other Spouse
☐ Other:

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, GRANTOR
Jasmine Bayot Golez Ocampo, spouse of Grantee

hereby GRANTS to **Dominique Ocampo, a married man as his sole and separate property**

the real property in the City of Corona County of Riverside, State of California:
Lot 28 of Tract No. 29263 in the City of Corona, County of Riverside, State of California, as per map recorded in Book 291 Page(s) 29 Through 31 of Miscellaneous Maps, in the Office of the County Recorder of Riverside County.

Dated   June 26, 2007

*Jasmin Bayst Goly-Ocampo*
Jasmine Bayot Golez Ocampo

STATE OF CALIFORNIA    }
                       } S.S.
COUNTY OF *Orange*     }

On *June 28, 2007 C-T*, before me, *Christopher Takagaki C-T notary Public*
personally appeared *Jasmine Bayot Golez Ocampo*
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.
Signature

> CHRISTOPHER TAKAGAKI
> Commission # 1676048
> Notary Public - California
> Orange County
> My Comm. Expires Jun 18, 2010

This area for official notarial seal.

Mail Tax Statements to: SAME AS ABOVE or Address Noted Below

EXHIBIT 2
PAGE 20

## CERTIFICATION

Under the provisions of Government Code  27361.7  I certify under the penalty of perjury that the following is a true copy of illegible wording found in the attached document.

<u>( Print or Type the page number(s) and Wording below ):</u>

" See Attached Document For Clarity "

DATE :

SIGNATURE :

EXHIBIT 2
PAGE 21

Government code 27361.7

I certify under penalty of perjury that the illegible portions of this document, to which this statement is attached, reads as follows,

State of _____

County of _____

On _____, before

me, _____._____

PERSOnally

appeared_____

_____

Personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she /they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____

(signature of notary)

Fidelity National Title Insurance Company

_____          _____

Place of execution., Tustin California          Date.

EXHIBIT 2
PAGE 22

Government Code 27361.7

I Certify Under Penalty of Perjury That The Notary Seal
On The Document To Which This Statement Is Attached
Reads As Follows:

Name of Notary: _____ Christopher Takagaki

Commission No: _____ 1676048

Date Commission Expires: _____ Jun 18, 2010

County: _____ Orange

By: _____

Date: _____ 7/2/07

EXHIBIT 2
PAGE 23

# EXHIBIT 3

## FIDELITY NATIONAL TITLE

Recording Requested By:
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT
[Company Name]
And When Recorded Mail To:
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT
[Name]
BLDG B, 901 E 104TH ST, SUITE 400/500
[Street Address]
KANSAS CITY, MO 64131
[City, State Zip Code]

490400449          [Space Abov

**DOC # 2007-0431653**
07/02/2007 08:00A Fee:69.00
Page 1 of 21
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|----|------|-----|------|
| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
| 1 |   |   | 21   |      | 1  |    |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM 033 |
|   |   |   |      |      | T:   |      | CTY | UNI  |      |

69

T 033

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    June 27, 2007    , together with all Riders to this document.

(B) "Borrower" is   DOMINIQUE OCAMPO A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.

(C) "Lender" is   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a    Federal Savings Bank    organized and existing under the laws of United States of America . Lender's address is   155 NORTH LAKE AVENUE, PASADENA, CA 91101

(D) "Trustee" is   FIDELITY NATIONAL TITLE INSURANCE CO.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3005 1/01
MERS Modified                                                                              Closing
The Compliance Source, Inc.                          Page 1 of 14     Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                 © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 24

(F)      "Note" means the promissory note signed by Borrower and dated      June 27, 2007      . The Note states that Borrower owes Lender  eight hundred eighty thousand and NO/100ths

                                                                Dollars         (U.S. $    880,000.00    ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      July 1, 2037   .

(G)      "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)      "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)      "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) [specify] | | |

(J)      "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)      "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)      "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)      "Escrow Items" means those items that are described in Section 3.

(N)      "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)      "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)      "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)      "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security

EXHIBIT 3
PAGE 25

Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of  RIVERSIDE                    :
                                        [Type of Recording Jurisdiction]          [Name     of     Recording Jurisdiction]
SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number: 120480028
which currently has the address of     2633 HUDSON AVENUE
                                        [Street]
          CORONA        ,              California   92881                    ("Property Address"):
          [City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.     Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment

Loan No: 126988900

---

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                        Closing
The Compliance Source, Inc.                    Page 3 of 14     Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 26



Order No. 49040649

## LEGAL DESCRIPTION

## EXHIBIT "ONE"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 28 of Tract No. 29263, in the City of Corona, County of Riverside, State of California, as shown by map on file in Book 291 Pages 29 through 31, inclusive of Maps, in the office of the County Recorder of said county.

Assessor's Parcel No: 120-480-028

EXHIBIT 3
PAGE 27

charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                                          Closing
The Compliance Source, Inc.                                Page 4 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                              © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 28

this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan,

Loan No:  126988900

EXHIBIT 3
PAGE 29

either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in

EXHIBIT 3
PAGE 30

writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument
MERS Modified
The Compliance Source, Inc.                    Page 7 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                        © 2007, The Compliance Source, Inc.

Form 3005 1/01
Closing

EXHIBIT 3
PAGE 31

Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3005 1/01
MERS Modified                                                                                Closing
The Compliance Source, Inc.                   Page 8 of 14     Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                              © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 32

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3005 1/01
MERS Modified                                                                                                        Closing
The Compliance Source, Inc.                        Page 9 of 14      Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                              © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 33

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument     Form 3005 1/01
MERS Modified                                                                  Closing
The Compliance Source, Inc.                  Page 10 of 14   Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                          © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 34

expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument   Form 3005 1/01
MERS Modified   Closing
The Compliance Source, Inc.   Page 11 of 14   Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com   © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 35

anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the

EXHIBIT 3
PAGE 36

fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
DOMINIQUE OCAMPO                     -Borrower
                                    [Printed Name]

_____ (Seal)
                                    -Borrower
                                    [Printed Name]

_____ (Seal)
                                    -Borrower
                                    [Printed Name]

_____ (Seal)
                                    -Borrower
                                    [Printed Name]

————————[Acknowledgment on Following Page]————————

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3005 1/01
MERS Modified                                                                              Closing
The Compliance Source, Inc.            Page 13 of 14   Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                              © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 37

## ACKNOWLEDGMENT

State of CA §

County of Orange §

On June 28, 2009, before me, Christopher Takasaki, Notary Public [name and title of officer] personally appeared DOMINIQUE OCAMPO

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

CHRISTOPHER TAKASAKI
Commission # 1676048
Notary Public - California
Orange County
My Comm. Expires Jun 18, 2010

Exp Jun 18, 2010

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:
   The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of          County, State of California, in book     , page      of official records.  Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full.  You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____          Date:_____
       (Trustee)

Loan No: 126988900

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument         Form 3005 1/01
MERS Modified
The Compliance Source, Inc.                    Page 14 of 14   Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                      © 2007, The Compliance Source, Inc.

EXHIBIT 3
PAGE 38

# FIXED/ADJUSTABLE RATE RIDER
## INTEREST ONLY PERIOD
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
### (    10 Year Interest Only Period)

Loan #     126988900                                 MIN:     100055401269889004

    THIS ADJUSTABLE RATE RIDER is made this 27th  day of  June,   2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to
INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

        2633 HUDSON AVENUE, CORONA, CA 92881

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

    **ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    The Note provides for an initial interest rate of          7.250        %. The Note
provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the first day of     July,   2012
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called a "Change Date."

**IndyMac Bank**
**Fixed/Adjustable Rate Rider - WSJ 1 Yr. Libor - Interest Only Period -**
**Multistate**

8480831  (0506)          VMP Mortgage Solutions, Inc.  (800)521-7291                  Form 5601
                                                                              6/05

EXHIBIT 3
PAGE 39

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths percentage point(s) ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two and NO/1000ths percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



Loan No: 126988900
8480831 (0506)

Page 2 of 5

Form 5601
6/05

EXHIBIT 3
PAGE 40

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
 **1.   UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:** ·

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **2.  AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:** ·

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan No: 126988900
8480831  (0506) ·                              Page 3 of 5                          Form 5601
                                                                                         6/05

EXHIBIT 3
PAGE 41

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
DOMINIQUE OCAMPO            -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                          -Borrower

Loan No: 126988900                                                            Form 5601
8480831 (0506)                          Page 5 of 5                            6/05

EXHIBIT 3
PAGE 43

# CERTIFICATION

Under the provisions of Government Code 27361.7 I certify under the penalty of perjury that the following is a true copy of illegible wording found in the attached document.

( Print or Type the page number(s) and Wording below ):

" See Attached Document For Clarity "

June 28, 2007
Christopher Takigaki
notary Public

DATE :      7 / 2 / 07

SIGNATURE :

EXHIBIT 3
PAGE 44